UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADVANCED COMMUNICATIONS, INC.,

    Plaintiff,

v.                                                                                                                                                                            Case No. 06-11051
                                                                                                                                                                  Hon. Sean F. Cox

BEST BUY STORES, LP

    Defendant.
_____

## **OPINION AND ORDER**

This matter is before the Court on Defendant's Motion for summary judgment. Both parties have briefed the issues and a hearing was held December 6, 2007. For the following reasons, the Court **GRANTS** in part, and **DENIES** in part, Defendant's Motion for summary judgment. Defendant's Motion is granted regarding Plaintiff's claims for fraud; negligent misrepresentation; breach of the covenant of good faith and fair dealing; unjust enrichment; and promissory estoppel. Defendant's Motion is denied with respect to Plaintiff's claims for breach of contract and account stated.

## **I. BACKGROUND**

This action arises out of an alleged breach of contract. Plaintiff, Advanced Communications, installs residential electrical wiring. Defendant, Best Buy, contracted with Lennar Homes in January 2005, to complete electrical wiring on new homes in the California Bay Area. Defendant subcontracted the work to A-1 Home Services. After having issues with A-1 Home Services, Defendant decided to switch and subcontract with Great Lakes Cable

1

Company ("GLCC").

Defendant had difficulties with the quality and timeliness of GLCC's work. By May 2005, Defendant had to provide its own personnel to assist GLCC in completing the work. In June 2005, Plaintiff began negotiations to purchase GLCC. Prior to purchasing GLCC, on June 27, 2005, Plaintiff met with Defendant's representatives who Plaintiff claims stated that Plaintiff would be permitted to complete wiring on approximately 3500 new homes constructed by Lennar Homes. Plaintiff bought GLCC, effective in July 2005. In July 2005, Plaintiff began working on the Lennar Homes project. Best Buy personnel remained in place and assisted Plaintiff on the job.

On August 4, 2005, Defendant emailed Plaintiff a Services Agreement it had drafted. The Services Agreement was effective July 1, 2005, with a one year renewable term. The email instructed Plaintiff to review the document and sign four copies and send them back to Defendant.

Nonetheless, on August 9, 2005, Defendant informed Lennar Homes that it was going to take all of the work in-house beginning in August 2005 and phase out third party labor. Defendant contends it was having trouble with Plaintiff's ability to meet the demands of the project. According to Plaintiff, unaware of Defendant's plan, Plaintiff signed and returned the Service Agreement to Defendant on August 18, 2005. On September 7, 2005, Defendant informed Plaintiff that it no longer wanted Plaintiff's services. Plaintiff was not given prior notice, or an opportunity to cure any alleged deficiencies with its service. Despite complaints about quality, Defendant approached several of Plaintiff's technicians to offer employment. Defendant hired three of Plaintiff's technicians to continue working on the Lennar Homes

project. Defendant completed the project in March 2007. Defendant claims it wired 1,098 homes for Lennar Homes.

On March 10, 2006, Plaintiff filed a Complaint. A Second Amended Complaint was filed June 16, 2006 alleging: (1) breach of the Services Agreement; (2) action on open account pursuant to MCL § 600.2145; (3) unjust enrichment; (4) fraud/negligent misrepresentation; and (5) promissory estoppel. On August 16, 2007, Defendant filed the instant Motion for summary judgment.

## II. STANDARD OF REVIEW

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

## III. ANALYSIS

### A. Breach of the Service Agreement

At the hearing, the parties both agreed that the Services Agreement was a binding

agreement between the parties. The parties also agree that the Service Agreement requires that Minnesota law applies to any contract disputes. [Motion, p.2, n.3; Response p.2]. The elements of a breach of contract under Minnesota law are: (1) formation of the contract; (2) performance by the plaintiff of any conditions precedent to his right to demand performance by the defendant; and (3) a breach of the contract by the defendant. *Industrial Rubber Applicators, Inc. v. Eaton Metal Products Company*, 285 Minn. 511, 513 (1969)(*overruled on other grounds*).

Plaintiff argues in its brief that the Services Agreement is ambiguous because it appears to require that termination be only for cause during the first year, but also contains contrary provisions. The Services Agreement provides that the "Initial Term" of the contract is a one year period beginning on the effective date of July 1, 2005. [Motion, Exhibit 24, p.2]. Pursuant to the contract:

> B. <u>Termination for Cause</u>. Either party may terminate this Agreement with immediate effect if the other party materially breaches this Agreement and fails to cure within five (5) days of receipt of written notice thereof. * * *
> C. <u>Termination without Cause</u>. After the expiration of the Initial Term, either party may terminate this Agreement upon ninety (90) days prior written notice to the other party. In the event of said termination by either party, Service Provider will perform all scheduled Services through the effective date of termination, unless said scheduled Services are cancelled by Best Buy.

[Motion, Exhibit 24, p.2]. Although the Services Agreement indicates that during the Initial Term, the Agreement can only be cancelled for cause, Defendant relied on other provisions to stop giving Plaintiff work under the agreement:

> f. **Nonexclusivity**. This Agreement shall not be deemed to create an exclusive relationship between Best Buy and Service Provider. Best Buy shall be entitled to use other parties to perform the Services covered hereby.
> * * *
> k. **No Minimum Guarantees**. Service Provider and Best Buy understand

> and agree that under this Agreement, including Exhibits, Best Buy does not guarantee any minimum amount of Services requests nor does it guarantee any minimum amount of revenue to Service Provider.

[Motion, Exhibit 24, pp.6-7]. Based on these two provisions, Defendant claims it is not obligated to give Plaintiff any business.

Contract interpretation is a question of law. *Travertine Corporation v. Lexington-Silverwood*, 683 N.W.2d 267, 271 (2004). "The primary goal of contract interpretation is to determine and enforce the intent of the parties." *Id.* "Where there is a written instrument, the intent of the parties is determined from the plain language of the instrument itself." *Id.* "[W]hen a contractual provision is clear and unambiguous, courts should not rewrite, modify, or limit its effect by a strained construction." *Id.* A contract is construed as a whole and the court attempts to harmonize all clauses, to avoid an interpretation that renders a provision meaningless. *Chergosky v. Crosstown Bell, Inc.*, 463 N.W.2d 522, 525-526 (1990). However, sometimes the provisions cannot be harmonized and there is an ambiguity. "A contract is ambiguous if it is *reasonably* susceptible to more than one construction." *City of Virginia v. Northland Office Properties LP*, 465 N.W.2d 424, 427 (Minn.App. 1991)(emphasis original). "Whether a contract is ambiguous is a question of law." *Id.* If the contract is ambiguous, resolving the ambiguity is a question of fact and extrinsic evidence may be considered. *Id.*

The Services Agreement is not ambiguous. Under the contract, either party could terminate the agreement only for cause within the first year. However, additional provisions provide that even while the agreement is in effect, Defendant may use other parties to perform work and is not obligated to give Plaintiff a minimum amount of work. Reading these provisions together, Defendant could choose not to give Plaintiff any work without terminating the

agreement. Thus, if Defendant later chose to give work to Plaintiff, the agreement would still be in place (barring termination by Plaintiff). Nothing in the plain language of the Services Agreement prevents Defendant from choosing not to give work to Plaintiff. As noted by Defendant, an unambiguous contractual provision "shall be enforced by courts, even if the result is harsh." *Dyrdal v. Golden Nuggets, Inc*., 672 N.W.2d. 578, 586 (Minn.App. 2003)(citation omitted). In addition, Plaintiff agreed at the hearing that these provisions can harmoniously be read together.

Although the Services Agreement is not ambiguous, and Defendant is free to choose not to give Plaintiff work under sections 14 (f) and (k), there is a question of fact if that is what Defendant intended to do in this case. Plaintiff presents evidence that Defendant did not just choose to give work to someone else without disturbing the agreement, Defendant terminated the agreement. Defendant emailed Lennar Homes on August 9, 2005, and indicated its intent to phase out third party labor. [Response, Exhibit T]. Plaintiff also presents deposition testimony that Defendant told Plaintiff it planned to phase out Plaintiff and no longer required its services. [Response, Exhibit C, pp.99-101; Exhibit J, pp.73, 194]. Further, Plaintiff points out that even though Defendant claims it was only exercising its option to withhold work from Plaintiff rather than terminate the agreement - Defendant hired several of Plaintiff's technicians. Whether Defendant intended to terminate the agreement with Plaintiff, or was merely exercising its right to not give Plaintiff work is a question of fact.

Plaintiff submits deposition testimony that it did not receive notice and an opportunity to cure as required under the Services Agreement. [Response, Exhibit B, p.52; Exhibit D, pp.103-105]. Accordingly, Plaintiff creates a genuine issue of fact regarding whether Defendant

agreement. Thus, if Defendant later chose to give work to Plaintiff, the agreement would still be in place (barring termination by Plaintiff). Nothing in the plain language of the Services Agreement prevents Defendant from choosing not to give work to Plaintiff. As noted by Defendant, an unambiguous contractual provision "shall be enforced by courts, even if the result is harsh." *Dyrdal v. Golden Nuggets, Inc*., 672 N.W.2d. 578, 586 (Minn.App. 2003)(citation omitted). In addition, Plaintiff agreed at the hearing that these provisions can harmoniously be read together.

Although the Services Agreement is not ambiguous, and Defendant is free to choose not to give Plaintiff work under sections 14 (f) and (k), there is a question of fact if that is what Defendant intended to do in this case. Plaintiff presents evidence that Defendant did not just choose to give work to someone else without disturbing the agreement, Defendant terminated the agreement. Defendant emailed Lennar Homes on August 9, 2005, and indicated its intent to phase out third party labor. [Response, Exhibit T]. Plaintiff also presents deposition testimony that Defendant told Plaintiff it planned to phase out Plaintiff and no longer required its services. [Response, Exhibit C, pp.99-101; Exhibit J, pp.73, 194]. Further, Plaintiff points out that even though Defendant claims it was only exercising its option to withhold work from Plaintiff rather than terminate the agreement - Defendant hired several of Plaintiff's technicians. Whether Defendant intended to terminate the agreement with Plaintiff, or was merely exercising its right to not give Plaintiff work is a question of fact.

Plaintiff submits deposition testimony that it did not receive notice and an opportunity to cure as required under the Services Agreement. [Response, Exhibit B, p.52; Exhibit D, pp.103-105]. Accordingly, Plaintiff creates a genuine issue of fact regarding whether Defendant

breached the Services Agreement by terminating the contract without complying with the notice and cure provisions of the contract.

In its Motion, Defendant also argues that Plaintiff cannot maintain its breach of contract claim because it cannot demonstrate that it suffered any damages as a result of the breach. Plaintiff argues that it is entitled to damages in the amount it would have received if Defendant had not breached. Plaintiff presents testimony regarding its profit margins and average revenue generated by its technicians on the Lennar Homes project. [Response, Exhibit F, pp.82-88]. Plaintiff also relies on the number of homes Defendant completed for the Lennar Homes project. [Response, p.10]. "Under Minnesota law, damages for breach of contract must be proved to a reasonable certainty, and a party cannot recover speculative, remote, or conjectural damages." *Children's Broadcasting Corporation v. The Walt Disney Company*, 357 F.3d 860, 865 (8th Cir. 2004). "Instead, once the fact of loss has been shown, the difficulty of proving its amount will not preclude recovery so long as there is proof of a reasonable basis upon which to approximate the amount." *Id.* (citation omitted). "The jury's award does not have to match any particular figure in the evidence as long as the award 'is within the mathematical limitations established by the various witnesses and is otherwise reasonably supported by the evidence as a whole.'" *Id.* (citation omitted). Plaintiff presents sufficient evidence to withstand summary judgment.

However, Defendant is entitled to summary judgment on Plaintiff's claim for breach of the implied covenant of good faith and fair dealing. The covenant of good faith and fair dealing prevents a party from "unjustifiably hindering the other party's performance." *Minnwest Bank Central v. Flagship Properties LLC*, 689 N.W.2d 295, 303 (Minn.App. 2004). "To establish a violation of this covenant, a party must establish bad faith by demonstrating that the adverse

7

party has an ulterior motive for its refusal to perform a contractual duty." *Id.* When the adverse party does not have a contractual duty to perform, summary judgment is appropriate. *Id.* In order to withstand summary judgment on this theory, Plaintiff must establish that Defendant hindered its performance, i.e. prevented it from working on homes, in contradiction to a contractual duty. In this case, Defendant did not have a contractual duty to have Plaintiff perform wiring services. The provisions discussed above allowed Defendant to use other parties, and does not obligate it to give a minimum amount of business to Plaintiff. Thus, Defendant did not have a contractual duty to allow Plaintiff to work on the Lennar Homes project.

**B.     Open Account**

Plaintiff asserts that it is owed uncollected funds pursuant to MCL § 600.2145, which provides, in pertinent part:

> In all actions brought in any of the courts of this state, to recover the amount due on an open account or upon an account stated, if the plaintiff or someone in his behalf makes an affidavit of the amount due, as near as he can estimate the same, over and above all legal counterclaims and annexes thereto a copy of said account, and cause a copy of said affidavit and account to be served upon the defendant, with a copy of the complaint filed in the cause or with the process by which such action is commenced, such affidavit shall be deemed prima facie evidence of such indebtedness, unless the defendant with his answer, by himself or agent, makes an affidavit and serves a copy thereof on the plaintiff or his attorney, denying the same. * * *

In this case, Plaintiff included the requisite claim and affidavit with its Second Amended Complaint. [Doc. 6]. Plaintiff alleged that it was owed $136,394.21. [Doc. 6, Exh. B]. However, Defendant answered Plaintiff's Complaint denying the amount owed, and Defendant included an affidavit to that effect. [Doc. 9]. In November 2006, Defendant paid Plaintiff $95,147.90, based on its own evaluation of the invoices. Plaintiff claims there is still a balance owed. Plaintiff offers an invoice summary indicating that Defendant currently owes an

outstanding balance of $39,638.52. [Response, Exhibit U].

Because Plaintiff presented invoices purporting to show a remaining outstanding balance, Defendant is not entitled to summary judgment on this claim.

### C. Unjust Enrichment and Promissory Estoppel

Plaintiff asserted quasi-contract claims under the doctrines of unjust enrichment and promissory estoppel. It is axiomatic that a court will not imply a contract where an express contract exists covering the same subject matter. *Belle Isle Grill Corp. v. Detroit*, 256 Mich.App. 463, 478 (Mich.App. 2003). Plaintiff conceded at the hearing that because Defendant admitted the Services Agreement was a binding contract between the parties, the quasi-contract claims should be dismissed. Accordingly, Defendant is entitled to summary judgment on Plaintiff's claims for unjust enrichment and promissory estoppel.

### D. Fraud / Negligent Misrepresentation

Plaintiff alleges Defendant committed fraud based on statements made by John Holzer, a representative of Defendant. Plaintiff alleges that Holzer told Plaintiff's president, Michael Falsetti, that Plaintiff would get to install all wiring for homes built by Lennar Homes in California that were covered under the agreement Defendant had with Lennar Homes. [Second Amended Complaint, ¶46]. Further, Plaintiff alleges that Holzer estimated Plaintiff would get to work on approximately 3,500 homes. [Second Amended Complaint, ¶47].

Defendant argues that Plaintiff cannot establish a claim for fraud or negligent misrepresentation because the statements Plaintiff relies on relate to future events rather than past or existing facts. Plaintiff concedes that the statements relate to future events, but argues they can still support a fraud claim where the statements were made with bad faith and with no

9

intention to perform.

"To establish fraud, the allegedly false statements must relate to past or existing facts, not to future promises or expectations." *Cook v. Little Caesar Enterprises, Inc*., 210 F.3d 653, 658 (6th Cir. 2000). However, there is a bad faith exception to the past or present fact requirement when the promise is made in bad faith without intention of performance. *Id.* In order to fall within the bad faith exception, evidence of fraudulent intent "must relate to conduct of the actor 'at the very time of making the representations, or almost immediately thereafter'" *Hi-Way Motor Company v. International Harvester Company*, 398 Mich. 330, 338 (1976).

Plaintiff claims that representatives for the parties met on June 27, 2005. At that time, according to Plaintiff, Defendant told Plaintiff it would get the work from Lennar Homes, which was estimated to be 3,500 homes. Plaintiff asserts that this representation was made with bad faith because on August 9, 2005, twelve days later, Defendant told Lennar Homes it did not intend to let Plaintiff complete any more work on the project and was phasing out third party labor. [Response, Exhibit T].[1] This evidence is sufficient to create an issue of fact regarding whether Defendant made representations in bad faith.

Although Plaintiff creates a genuine issue of fact on whether Defendant made bad faith representations, Defendant argues that Plaintiff's claim still fails in light of the merger clause contained in the Services Agreement. The Services Agreement states:

> h. <u>Entire Agreement</u>. This writing is intended by the parties as the final and binding expression of their contract and agreement and is a complete and

---

[1] Although unpublished, in *Ventura Systems, Inc. v. Jenzano Corporation*, 2002 WL 31082150 (Mich.App. 2002), the Michigan Court of Appeals held that where the conduct evidencing bad faith occurred "within days" of the allegedly false representations, the assertion falls within the bad faith exception.

> exclusive statement of the terms thereof and supersedes all prior
> negotiations, representations and agreements.
> * * *

[Motion, Exhibit 24, p.6]. Plaintiff does not respond to this argument.

Plaintiff's fraud claim fails because Plaintiff cannot establish reasonable reliance. "Reliance upon oral representations or prior documents, even if false, is unreasonable if the party enters into a subsequent agreement." *Cook v. Little Caesar Enterprises, Inc.*, 210 F.3d 653, 658 (6th Cir. 2000). In *UAW-GM Human Resource Center v. KSL Recreation Corp.*, 228 Mich.App. 486 (Mich.App. 1998), the plaintiff alleged fraud because a hotel replaced unionized workers with non-union workers after the plaintiff, a union, had reserved space for a convention. The plaintiff argued that the parties agreed the hotel would have unionized employees at the time of the convention. However, the letter of agreement signed by the parties did not contain such a requirement. The letter of agreement did contain a merger clause. The court held that "the merger clause made it unreasonable for plaintiff's agent to rely on any representations not included in the letter of agreement."[2] *Id.* at 504. The court granted summary disposition on the plaintiff's fraud claim.

The Services Agreement signed by Plaintiff explicitly indicates that Defendant may use other parties and does not guarantee a minimum amount of work. Further, the agreement, once signed, is effective as of July 1, 2005. Thus, any reliance on the allegedly fraudulent statements of Defendant to the contrary was not reasonable in light of the merger clause contained in the Services Agreement. Defendant is entitled to summary judgment on Plaintiff's claims for fraud

---

[2]The *UAW-GM* court did indicate an exception when the fraud would invalidate the merger clause itself. *UAW-GM*, 228 Mich.App. at 503. However, Plaintiff does not advance that argument and does not present evidence supporting such a finding.

and negligent misrepresentation.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part, and **DENIES** in part, Defendant's Motion for summary judgment. Defendant's Motion is granted regarding Plaintiff's claims for fraud; negligent misrepresentation; breach of the covenant of good faith and fair dealing; unjust enrichment; and promissory estoppel. Defendant's Motion is denied with respect to Plaintiff's claims for breach of contract and account stated.

**IT IS SO ORDERED.**

        **S/Sean F. Cox**
        **Sean F. Cox**
        **United States District Judge**

**Dated: December 12, 2007**

**I hereby certify that a copy of the foregoing document was served upon counsel of record on December 12, 2007, by electronic and/or ordinary mail.**

        **S/Jennifer Hernandez**
        **Case Manager**